[Cite as *State v. Gibson*, 2014-Ohio-3421.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100727

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**KENNETH GIBSON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED
IN PART AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-563845-A

**BEFORE:** Blackmon, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 7, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Marc D. Bullard
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Kenneth Gibson appeals his convictions for gross sexual imposition and kidnapping and assigns the following four assigned errors:

I. Defendant was denied his right to a speedy trial in violation of R.C. 2945.71 and the State of Ohio and United States Constitutions.

II. Defendant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

III. Kenneth Gibson's convictions for kidnapping and gross sexual imposition are against the manifest weight of the evidence.

IV. The trial court erred in concluding that Kenneth Gibsons's kidnapping and gross sexual imposition convictions were not allied offense of similar import.

{¶2} Having reviewed the record and pertinent law, we conclude the trial court erred by failing to conclude that the gross sexual imposition charges and the kidnapping with sexual motivation charge were allied offenses of similar import; therefore, we reverse and remand for further proceedings consistent with this opinion. The apposite facts follow.

{¶3} The Cuyahoga County Grand Jury indicted Gibson for one count of kidnapping with a sexual motivation specification and two counts of gross sexual imposition. The charges were based on the allegation that Gibson forcibly engaged in sexual contact with his 29-year-old niece. Gibson waived his right to a jury trial, and the matter was conducted before the bench.

**{¶4}** Gibson's niece lived next door to Gibson. She and Gibson often spent time drinking together at Gibson's house along with Gibson's girlfriend. On June 16, 2012, the niece went over to Gibson's house for drinks. According to the niece, it was just her and Gibson there because he had just broken up with his girlfriend. They drank three to four bottles of wine over an eight or nine-hour period of time. She could not recall how many glasses she drank, but stated she was not impaired.

**{¶5}** The niece stated that at one point, Gibson walked over to her, bent down, and kissed her foot. She asked Gibson what he was doing, but Gibson did not respond. She "shook it off" and continued to drink.

**{¶6}** Between midnight and 1:00 a.m., the niece decided to leave because Gibson had kissed her inner thigh. Gibson promised to give her everything he owned if she would "have sex with him." The niece walked to the front door, but she could not open the door because it was locked, although the key was in the lock. Gibson pulled her away from the door and stood in front of her, blocking the door. He then "dropped his pants and his underwear." He grabbed his niece's hand and "made me stroke his penis twice." Gibson also pulled her close and placed his hand underneath her dress and underwear and "stuck his finger around my anus." Gibson would not let her leave until she promised not to tell anyone what had occurred.

**{¶7}** When the niece returned home, she told her cousin who lived with her what happened and called her aunt, uncle, and mother. Her aunt then called 911. Cleveland Police responded to the call and arrived at the niece's house around 2:00 a.m. Officer Dickens took a statement from the niece. He believed she was intoxicated because she smelled of alcohol and her eyes were red. However, he said her speech was not slurred and that "she knew what was going on." The niece told him that Gibson made sexual advances towards her and that he kissed her feet and legs and went up her dress to touch her anal area.

**{¶8}** Officer Dickens went next door to speak with Gibson. Officer Dickens stated that Gibson "looked like he just woke up," and was "heavily intoxicated." Gibson was only wearing underwear. Gibson allowed the officer into his apartment. The officer observed five bottles of wine, a key in the lock of the inside door, and jeans lying on the floor.

**{¶9}** The niece was transported to Hillcrest Hospital for a sexual assault examination by a Sexual Assault Nurse Examiner ("SANE") trained in the collection of sexual assault evidence. The SANE nurse collected dry swabs from the victim's foot, inner thigh, and anal area. The nurse also took a dry swab of the victim's right breast because the victim had told her that Gibson placed his mouth on her breast.

{¶10} Analysis of the swabs from the breast and perianal showed it contained only the niece's DNA. The swab from the foot showed DNA consistent with Gibson's, and Gibson could not be excluded as a possible contributor to the DNA on the swabs from the left hand and inner thigh.

{¶11} The trial court found Gibson guilty of all three counts. At the sentencing hearing, the trial court concluded that the charges were not allied offenses and did not merge the sentences. The trial court sentenced Gibson to three years in prison for the kidnapping with sexual motivation count, and one year each for the gross sexual imposition counts. All of the counts were ordered to be served concurrently.

## Speedy Trial Violation

{¶12} In his first assigned error, Gibson argues that his statutory and constitutional rights to a speedy trial were violated. Gibson was in jail for 479 days until his trial commenced.

{¶13} Gibson filed a pro se motion to dismiss based on the violation of his right to a speedy trial. However, he did this at a time that he was represented by counsel. The trial court did not rule on the motion, and no mention of it was made prior to trial. This did not constitute error by the trial court because a defendant cannot act as co-counsel on a case in which he has counsel. It is well established that although a defendant has the right to counsel or the right to act pro se, a

defendant does not have any right to "hybrid representation." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus; *State v. Thompson*, 33 Ohio St.3d 1, 6-7, 514 N.E.2d 407 (1987). The right to counsel and the right to act pro se "are independent of each other and may not be asserted simultaneously." *Martin*, paragraph one of the syllabus.

{¶14} As a result, when counsel represents a criminal defendant, a trial court may not entertain a defendant's pro se motion. *State v. Washington*, 8th Dist. Cuyahoga Nos. 96565 and 96568, 2012-Ohio-1531, ¶ 11 ("Because [defendant] chose to proceed with legal representation, the court could not consider [defendant]'s motion to withdraw his plea, which his appointed counsel did not agree with."); *State v. Pizzarro*, 8th Dist. Cuyahoga No. 94849, 2011-Ohio-611, ¶ 9 ("Had the trial court entertained defendant's pro se motion while defendant was simultaneously being represented by appointed counsel, this would have effectively constituted hybrid representation in violation of the established law.").

{¶15} Moreover, even if the motion was considered, it would be without merit. The Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee an accused the right to a speedy and public trial. *State v. Ginley*, 8th Dist. Cuyahoga No. 90724, 2009-Ohio-30. The standard of review that appellate courts apply to speedy trial issues is to count the days as set forth in R.C. 2945.71. *State v. Stevens*, 8th Dist. Cuyahoga No. 87693,

2006-Ohio-5914. The trial must be held within 270 days of arrest in order to effectuate a speedy trial. R.C. 2945.71(C)(2). However, pursuant to R.C. 2945.71(E), each day spent in jail "on a pending charge" acts as three days toward speedy trial time; thus, 90 days time in jail would equate to 270 days using the triple-count provision.

{¶16} Gibson was arrested on June 17, 2012. Because he was incarcerated while awaiting trial, the state had 90 days to bring Gibson to trial, or until September 17, 2012. The date of arrest is not included in the calculation of days in determining a speedy trial violation. *State v. Steiner*, 71 Ohio App.3d 249, 250-251, 593 N.E.2d 368 (9th Dist.1991); *State v. Thieshen*, 55 Ohio App.2d 99, 379 N.E.2d 622 (3d Dist.1977). Thus, Gibson's speedy trial time began on June 18, 2012.

{¶17} Although the trial did not commence until October 9, 2013, the trial court had set the matter for trial several other times only to have it continued by various tolling events. Under R.C. 2945.72, the time within which an accused must be brought to trial is extended for various reasons, including motions filed by the accused, continuances requested by the accused, the time required to secure counsel for the accused, and reasonable continuances granted other than upon the accused's motion. *See State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283; *State v. Byrd*, 8th Dist. Cuyahoga No. 91433, 2009-Ohio-3283; *State v.*

*Pirkel*, 8th Dist. Cuyahoga No. 93305, 2010-Ohio-1858. The instant case was repeatedly continued because of Gibson's requests for continuances and other various motions he filed.

{¶18} From June 18, 2012 until Gibson filed his discovery motions on July 9, 2012, 21 days had run on Gibson's right to a speedy trial. From July 9, 2012 until November 14, 2012, the time was tolled based on various motions and continuances Gibson filed. During this tolling time, Gibson filed a motion for discovery and bill of particulars, motion for reduced bond, several continuances of pretrials and a supplemental motion to reduce bond. In counting this time, we took into consideration that some of the times overlapped.

{¶19} Gibson's speedy trial time commenced again on November 14 until December 10, 2012, for a total of 26 single days. The time was then again tolled from December 11, 2012 until March 12, 2013, because of various motions filed by Gibson. During this time, the trial was also continued because the court was in trial and defense counsel was also unavailable. Scheduling and docketing conflicts are reasonable grounds for extending an accused's trial date beyond the speedy trial limit date. *State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d 1095 (1976); *State v. Saffell*, 35 Ohio St.3d 90, 92, 518 N.E.2d 934 (1988).

**{¶20}** Gibson also filed a motion to suppress and a motion to disqualify counsel.[1]  Neither of these was ruled upon by the trial court.  However, "motions filed by the defense toll the speedy trial time under R.C. 2945.72(E) for a 'reasonable period' to allow the state an opportunity to respond and the court an opportunity to rule."  *State v. Walker*, 8th Dist. Cuyahoga No. 99239, 2013-Ohio-3522, ¶ 20, citing  *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283. This court has interpreted the reasonableness requirement of the rule to mean 30 days.  *Walker* at ¶ 20; *State v. Barb*, 8th Dist. Cuyahoga No. 90768, 2008- Ohio-5877, at ¶ 1.  Therefore, the motion tolled the time for an additional 30 days.

**{¶21}** Gibson's new counsel also requested discovery, which does not appear to have been responded to by the state.  Thus, we attribute the reasonable amount of time of 30 days to toll the time period.   Pretrials were also continued six times at Gibson's request.

**{¶22}** On March 12, 2013, the time for Gibson's speedy trial began to run again until March 27, 2013, for an additional 16  days.  From March 28 until his trial on October 9, 2013, Gibson's speedy trial time was tolled.  During this time, Gibson filed a request to receive copies of the materials given to counsel, which was not ruled on by the trial court until after sentencing.  Thus, the reasonable

---

[1]At trial, Gibson did not protest his representation by assigned counsel.

tolling period of 30 days applies. Gibson also requested independent DNA testing. This request resulted in the trial being continued five times in order to wait for the DNA results. In addition, the trial was also continued once because the court and defense counsel were unavailable due to trials in other cases. Gibson also filed a motion to disqualify counsel, which does not appear to be ruled upon, thus the reasonable 30-day time period again applies. Based on our calculations, which takes into account any overlapping time, only 63 days had elapsed, which was well below the 90 days for a speedy trial.

{¶23} Moreover, we note that on July 16, 2012, the state requested discovery from Gibson that was never responded to by Gibson. This alone would have tolled the time for trial for all but 30 days. The Ohio Supreme Court in *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, held as follows:

> We conclude that a defendant's failure to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D). Having so concluded, we answer the certified question in the affirmative by holding that the tolling of statutory speedy-trial time based on a defendant's neglect in failing to respond within a reasonable time to a prosecution request for discovery is not dependent upon the filing of a motion to compel discovery by the prosecution. In addition, we hold that a trial court shall determine the date by which the defendant should reasonably have responded to a reciprocal discovery request based on the totality of facts and circumstances of the case, including the time established for response by local rule, if applicable.

*Id.* at ¶ 24. Accordingly, Gibson's statutory right to a speedy trial was not violated.

{¶24} We also find that Gibson's constitutional right to a speedy trial was not violated. There are four broad factors within the framework for analyzing constitutional speedy-trial claims: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The length of delay is the triggering mechanism. *State v. Kraus*, 2d Dist. Greene No. 2011-CA-35, 2013-Ohio-393, ¶ 23, citing *Barker*. "'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id.*, quoting *Barker*. "Generally, courts have found that a delay approaching one year becomes 'presumptively prejudicial.'" *State v. Winn*, 8th Dist. Cuyahoga No. 98172, 2012-Ohio-5888, ¶ 44, citing *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1.

{¶25} In *Winn*, this court determined that over a year and a half between the arrest and the defendant's trial was not presumptively prejudicial because the defendant "requested numerous continuances [and] filed many motions." *Winn* at ¶ 44. This court found that all of these delays were for the defendant's benefit and thus contributed to the delay in timely prosecuting Winn. *Id.*

{¶26} The instant case was pending for over a year from Gibson's arrest to his trial. During that time, Gibson requested numerous continuances and filed a multitude of motions. Because of the specific circumstances of this case, we conclude the delay was not presumptively prejudicial and did not trigger the consideration of the *Barker* factors, because the delays were for the defendant's benefit. *See also State v. Castro*, 8th Dist. Cuyahoga No. 100379, 2014-Ohio-2398 (constitutional speedy trial rights not violated even though the plea was taken over a year after defendant's arrest because the delay was caused by the defendant). Further, even if we found the delay presumptively prejudicial, Gibson has not demonstrated any prejudice and our independent review finds no such prejudice. Accordingly, Gibson's first assigned error is overruled.

## Ineffective Assistance of Counsel

{¶27} In his second assigned error, Gibson argues his counsel was ineffective for failing to protect his rights to a speedy trial.

{¶28} As we held above, Gibson's rights to a speedy trial were not violated. Therefore, his counsel was not ineffective. Accordingly, Gibson's second assigned error is overruled.

## Manifest Weight of the Evidence

{¶29} In his third assigned error, Gibson argues his convictions are against the manifest weight of the evidence.

{¶30} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id.* at ¶ 25.

{¶31} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

**{¶32}** Gibson argues the victim was not credible because: (1) she admitted she had a good relationship with the defendant prior to the incident, (2) she stated she was not impaired after drinking for eight to nine hours, and (3), she failed to tell the responding officer that Gibson forced her to stroke his penis and placed his mouth on her breast. Based on these arguments, Gibson is not arguing the testimony contradictory, but that it was not credible. We defer to the factfinder as to whether the witness is credible because the factfinder is best able to weigh the evidence and judge the credibility of a witness by viewing the demeanor, voice inflections, and gestures of the witness testifying. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994); *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶33}** In fact, the trial court questioned the police officer whether his report indicated that Gibson placed his mouth on the victim's breast. Thus, the court was well aware that the victim failed to tell the officer of this violation. The responding officer also testified that although it was obvious the victim was intoxicated, her speech was not slurred and "she knew what was going on." We conclude there is no reason to veer from the deference we give to the finder of facts regarding credibility.

**{¶34}** Gibson also argues the DNA evidence failed to support the victim's testimony. There is no dispute that the DNA on the victim's left foot matched

Gibson. This supported the victim's testimony the assault started with Gibson kissing her foot. The victim had testified that Gibson had touched her in the anal area, but none of Gibson's DNA was found in this location. However, the medical records showed that the victim had defecated after the assault. The DNA analyst stated that it is probable that "any foreign DNA would be pushed out with the defecation."

{¶35} The DNA found on the victim's hand and inner thigh showed that Gibson could not be excluded as a contributor to the mixed DNA. The DNA analyst testified that the likelihood that an unrelated individual was the contributor was one in 157 million for African-Americans, one in 857 million for Caucasians, and one in 2 billion for Hispanics. Therefore, the chance that someone else was a contributor was slim. The analyst acknowledged that DNA can be transferred from sitting on a chair, but that "the probability of having the amount needed to actually detect [the DNA] is slim." Based on the analyst's testimony, the DNA results were not contradictory to the victim's testimony.

{¶36} Gibson argues that the victim initially did not tell the nurse or the officer that a key was in the door that she claimed she was unable to open. However, at trial she testified that there was a key left in the door. Whether the key was in the door or not, the victim was unable to open it because Gibson was blocking the door. Gibson's third assigned error is overruled.

## Allied Offenses

{¶37} In his fourth assigned error, Gibson argues that his kidnapping with sexual motivation count should have merged with the gross sexual imposition counts because the kidnapping was incidental to the gross sexual imposition. We review a trial court's determination as to whether offenses should merge under a de novo standard. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶38} The Double Jeopardy Clauses of the United States Constitution and Article I, Section 10, of the Ohio Constitution prohibit multiple punishments for the same offense. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. Accordingly, R.C. 2941.25(A) provides that when a defendant's conduct results in the commission of two or more allied offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A).

{¶39} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court held that "when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at syllabus. The question is whether it is possible to commit one offense and commit the other with the same conduct. If the offenses correspond to such a degree that the conduct of the defendant can

constitute the commission of both of the offenses, then the offenses are of similar import. *Id.* at ¶ 48.

{¶40} If the offenses are of similar import, the court must then determine if they were in fact committed by the same conduct — a single act, committed with a single state of mind. *Id.* at ¶ 49. Conversely, if the commission of one offense could not result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id.*

{¶41} In the instant case, kidnapping and gross sexual imposition can be committed by the same conduct as some restraint is usually necessary to commit the offense. We must determine whether Gibson committed the kidnapping with the same intent he had to commit the gross sexual imposition. Here, Gibson had kissed the victim's foot and inner thigh before she got up to leave. He then blocked the door, grabbed her hand and forced the victim to stroke his penis. The question is whether the blocking of the door was merely incidental to Gibson's gross sexual imposition.

{¶42} The Ohio Supreme Court in *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus, held that when a kidnapping is merely incidental to another underlying crime, there exists no separate animus sufficient to sustain separate convictions. *Id.* On the other hand, when the kidnapping "subjects the

victim to substantial increase in risk of harm separate and apart from" the other underlying crime, a separate animus exists for each offense sufficient to support separate convictions. *Id.* Likewise, when, in a kidnapping, "the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions[.]" *Id.*

**{¶43}** Analyzing Gibson's conduct under *Logan* establishes that the kidnapping of the victim was incidental to the gross sexual imposition. Gibson's blocking the door was to facilitate the gross sexual imposition. The restraint was not prolonged or substantial and did not subject the victim to a substantial risk of harm separate and apart from the underlying offense of gross sexual imposition.

**{¶44}** It could be argued that Gibson's blocking the door in order to plead with the victim not to tell anyone about the acts he committed would be separate from the gross sexual imposition. However, Gibson was specifically charged with kidnapping with sexual motivation. Therefore, the kidnapping charge was related to the gross sexual imposition.

**{¶45}** When we find reversible error in the imposition of multiple punishments for allied offenses, we must reverse the sentence and remand for a new sentencing hearing at which the state will elect which allied offense it will pursue

against the defendant. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25.

**{¶46}** Accordingly, we sustain Gibson's fourth assigned error and  remand for a new sentencing hearing consistent with and limited to this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.    Case remanded to the trial court for execution of sentence

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON,   JUDGE

EILEEN A. GALLAGHER,   J., CONCURS;
SEAN C. GALLAGHER, P.J., (CONCURS
IN PART AND DISSENTS IN PART WITH
ATTACHED OPINION)

SEAN C. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶47}** I concur fully in the judgment and analysis of the majority opinion with the exception of paragraph No. 43, with which I respectfully dissent. Although I accept the logical conclusion offered by the majority in that paragraph that a sexual motivation specification may well tie the kidnapping to the gross sexual imposition charge, I do not believe that fact is controlling for purposes of merger. The recent body of cases from our Supreme Court detailing merger analysis has taken us to a point where the conduct of the accused, and not a specification, is the focal point of any analysis. *See State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923; *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, and *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245. For this reason, I dissent.