[Cite as *Cleveland v. Collins*, 2018-Ohio-958.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105804

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## CARL A. COLLINS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2014 TRC 050482

**BEFORE:** McCormack, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 15, 2018

**FOR APPELLANT**

Carl A. Collins, pro se
12621 Walnut Hill Drive
North Royalton, OH 44133


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland Law Department

Kimberly G. Barnett-Mills
Chief City Prosecutor

By: Karyn J. Lynn
Assistant City Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, OH 44113

TIM McCORMACK, P.J.:

{¶1} Defendant-appellant Carl A. Collins, pro se, appeals from a judgment of the Cleveland Municipal Court, convicting him of operating a vehicle under the influence ("OVI") in violation of R.C. 4511.19(A)(1), OVI and refusing a chemical test with a prior conviction within 20 years in violation of R.C. 4511.19(A)(2), and driving under OVI suspension in violation of R.C. 4510.14. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

Procedural History and Substantive Facts

{¶2} On September 24, 2014, Collins was charged with OVI, OVI in connection with a refusal to submit to testing and having a prior conviction within 20 years, driving while under OVI suspension, and driving outside of marked lanes. Collins entered not guilty pleas to all of the charges and proceeded pro se on the matter. He filed a motion to suppress and a supplemental motion to suppress. The court held a hearing in which it heard testimony from Ohio State Trooper Hiram Morales and Collins, on his own behalf.

{¶3} Trooper Morales has been employed with the Ohio State Highway Patrol for 11 years, performing traffic enforcement and OVI apprehension. He has received training concerning detection and apprehension of impaired drivers and is familiar with the National Highway Traffic Safety Administrative ("NHTSA") manual and its standards. Trooper Morales has received training in the administration of field sobriety tests in accordance with the NHTSA standards, and he has conducted over 100 OVI stops.

**{¶4}** Trooper Morales testified that he was working at 1:11 a.m. on September 24, 2014, when he observed a vehicle drive outside of the marked lanes of I-90 approximately four times. He stopped the vehicle, approached the driver, and requested the driver's license and vehicle registration. When he ran a computer check of the driver's license, he learned that the driver, Carl Collins, was under an administrative license suspension ("ALS") for an OVI refusal on August 29, 2014. Trooper Morales asked Collins to exit the vehicle, and he inquired of Collins's suspension. When Collins exited the vehicle, the trooper observed Collins chewing gum and asked Collins to spit it out. When Collins spit out the gum, Trooper Morales smelled alcohol on Collins's breath. The trooper asked Collins if he had been drinking, and Collins replied that he had not.

**{¶5}** At this point, Trooper Morales asked Collins to perform certain field sobriety tests. He testified that Collins consented to taking the tests. The trooper first conducted the horizontal gaze nystagmus ("HGN") test. Trooper Morales testified concerning the NHTSA standard for this test:

> First we ask the individual/suspect if there's any issue with their eyesight. Any eye condition or head trauma we should be aware of or the medical issues that the person has. Then we use a stimulus or a pen is placed slightly above eye level between 12 and 15 inches from the center of the individual's face.
> * * *
>
> We advised Mr. Collins that he has to follow the tip of the pen with his eyes only. He's not to move his head during the test. The pen is going to be moving from one side to the other at a slow pace. With each clue, there's

a specific amount of time that we have to move the pen from one side on the other.

{¶6} The trooper testified that he administered the test in accordance with the NHTSA standards, allowing Collins to remove his eyeglasses. The trooper further testified regarding the clues of impairment from this test and explained what they meant and what he observed:

> Witness: We are looking for smooth pursuit, in maximum deviation and onset prior to 45 degree[s] as well as vertical nystagmus. The defendant showed clues of lack of smooth pursuit, maximum nystagmus, and that's four clues out of a possible six clues.
>
> Prosecutor: Okay. And how many clues need to be observed in order to indicate impairment?
>
> Witness: Four.
>
> Prosecutor: Okay. And you stated he had lack of smooth pursuit. What does that mean?
>
> Witness: Basically, when you [are] looking for smooth pursuit, best way to explain it is * * * [i]f you move your eyes from one side to the other, it should be a smooth movement from one side [to] the other. The defendant's case, you can see jerking of the eye as they were going from one side to the other.
>
> Prosecutor: What does that indicate to you?
>
> Witness: The presence of alcohol in his system.
>
> Prosecutor: In which eye or eyes did you obtain lack of smooth pursuit?
> Witness: On both. Right and left.
>
> Prosecutor: You stated nystagmus with maximum. How would you describe what that means?

Witness: Again we are looking for involuntary jerking of the eyes. In a normal individual, you move your stimulus all the way to the side as far as eyes can go, allow the eyes to set and then you hold it there for four seconds, no more than 30 seconds and you [are] looking for again, involuntary jerking of the eyes.

Prosecutor: And in which eye or eyes did you observe that in Mr. Collins?

Witness: Both eyes, left and right.

{¶7} The trooper then conducted the walk-and-turn ("WAT") test. Trooper Morales testified concerning the NHTSA standard for this test. The trooper explained that an officer asks the suspect if he has any medical issues with his back or lower extremities that may prevent them from walking a straight line. He then instructs an individual as follows:

I tell the defendant not to start the test until the instructions are completed. Proceed to either use a straight line on the pavement or have the defendant imagine a straight line on the pavement. I usually allow the individual to use the front license plate of my patrol car as reference point for a straight line.

My first set of instructions, I'll ask the defendant when told to do so they have to place their left foot on the line, right foot in front of it touching heel to toe. Hands down to their side and to hold that position for the very next set of instructions.

Once the defendant is in the requested position, I'll demonstrate the fact that they have to take nine steps. First step from the initial position would be step number one. Because of distance restraints, I usually take three steps just to explain/demonstrate the test, but I make an emphasis to the defendant that they have to take nine steps heel to toe.

First step would be step number one. Once they reach their nin[th] step, the front foot, whichever it is, stays planted, the back foot comes around, take the few choppy steps, basically pivoting on just the front foot. Once they turn around, again, first step would be step number one. They take nine more steps.

Basically nine steps forward, turn around, as they were instructed, and walk back taking nine steps heel to toe. Before the test begins, I tell them to look down at their toes, count out loud every step, don't stop until that person [has] completed the test.

Then I'll ask them if they have any questions for me or if there's something within the test that they didn't understand.

{¶8} Trooper Morales testified that he considered Collins's age as a factor in taking the test, but NHTSA standards did not prohibit someone of his age (70 years old at the time) from performing the test. He asked Collins if he had any physical limitations that would prevent him from being able to take the test. The trooper testified that Collins advised the trooper that he "had some issues with his right leg." The trooper stated that he was going to give Collins a demonstration and Collins could then decide whether he could perform the test. According to the trooper, Collins "said he was going to give it a try." The trooper then asked Collins to perform the WAT test.

{¶9} Trooper Morales testified that he administered the WAT test after Collins indicated that he understood the trooper's instructions. The trooper observed three of a possible eight clues of impairment with Collins's performance — starting before instructions are complete, failing to touch heel-to-toe, and turning incorrectly. The number of clues indicative of impairment is two.

{¶10} Trooper Morales then administered the one-legged stand ("OLS") test. Once again, Collins emphasized his knee issue and, once again, the trooper told Collins

that it was his choice as to whether to perform the test. The trooper also testified regarding the NHTSA standards for administration:

> Again we ask the defendant, we already know if they have any issues with their back or knees based on the WAT test so again, I'll reiterate, that I'll give the explanation for the test and the defendant will let me know if they can do the test or not based upon their condition. I'll ask the defendant to put feet [his] together. Hand[s] to the side again. They're not going to start the test until told to do so.
>
> When told to do so, they're going to raise whichever foot they prefer. It's their choice on the foot they're going to use. They're going to raise that foot approximately six inches from the ground. Toes are going to be pointed out. They're * * * looking down on their toes. Hands down to their side. When they're in an established position, they're going to start counting the following manner. One thousand, a thousand two, a thousand three, and so on so forth. That test is going to last 30 seconds.
>
> In the meantime, if they drop their foot during those 30 seconds, they're told to bring their same foot back up and continue counting where they left off. * * *

{¶11} The trooper observed two clues of impairment — swaying while counting, and dropping his foot, to the point where Collins "basically almost fell." Two clues in this test are indicative of impairment.

{¶12} Finally, the trooper testified that Collins refused to take the portable breath test, and Collins was placed under arrest. According to Trooper Morales, Collins was under the influence of alcohol and not able to drive a motor vehicle. Trooper Morales engaged his dashboard camera to record the events of the evening, and the camera recorded the events without sound.

{¶13} Following the suppression hearing, and after viewing the trooper's dashboard camera, the court denied Collins's motion to suppress and scheduled the matter for trial.

{¶14} A jury trial commenced on March 9, 2017, following numerous continuances, delays, and Collins's interlocutory appeal of the trial court's denials of Collins's motion to suppress and motion to dismiss. At trial, Trooper Morales testified on behalf of the city, and Collins proceeded pro se and testified on his own behalf. The state introduced into evidence video footage from Trooper Morales's dashboard camera, which was played for the jury.

{¶15} Trooper Morales testified for the jury that he observed Collins's vehicle drive over the marked lanes of I-90 approximately four times, by "at least a tire's width," at almost 1:30 a.m. on September 24, 2014. The trooper initiated a traffic stop and ran Collins's driver's license through the Law Enforcement Automated Data System ("LEADS"), which showed that Collins was under an administrative license suspension for a "refusal" from a previous OVI stop in August 2014. When the trooper approached Collins, he observed Collins chewing gum. He asked him to spit the gum out, and when he did, the trooper smelled alcohol on Collins's breath. The trooper testified that Collins denied having been drinking.

{¶16} Trooper Morales then testified that he administered three field sobriety tests: HGN, WAT, and OLS. He testified at length regarding the NHTSA standards for administration of the tests and how he administered the tests on Collins in accordance

with these standards. The trooper testified that Collins agreed to perform the tests, despite advising the trooper that he had issues concerning his knee. Trooper Morales stated that he took into consideration Collins's age in administering the test, but the NHTSA standards do not prohibit an individual over 65 years of age from performing the physical field sobriety tests, such as the WAT and the OLS tests. Trooper Morales testified that Collins demonstrated four clues of impairment during the HGN test, three clues of impairment during the WAT test, and two clues of impairment during the OLS test. In each test, the number of clues met or exceeded the number of clues indicative of impairment. Trooper Morales stated that Collins refused the portable breath test.

{¶17} On cross-examination, Trooper Morales testified that he did not recall Collins advising him that he had eye surgery a couple of months before the arrest.

{¶18} On his own behalf, Collins testified that he was returning from work on the morning in question and he had not been drinking. He stated that he believed the highway lanes were 12 feet apart when in reality they were only 10 feet wide. Collins indicated that he may have driven over the marked lanes because he assumed, incorrectly, that he had more room for his large car to travel within the lanes. Collins also testified that he told Trooper Morales that he had a "bad eye." He conceded that he believed he could perform the HGN test. Collins explained his knee problem and an injury to his "semicircular canals," which determine balance. Collins also testified that he was not drinking that morning because he is allergic to alcohol. Finally, Collins admitted on

cross-examination that he was convicted of an OVI offense in 2002 and that he was under an ALS suspension for an OVI refusal at the time of the stop in question.

{¶19} The jury found Collins guilty of OVI in violation of R.C. 4511.19(A)(1), OVI and refusing a chemical test with a prior conviction within 20 years in violation of R.C. 4511.19(A)(2), and driving under OVI suspension in violation of R.C. 4510.14. The minor misdemeanor charge of a marked lanes violation was subsequently dismissed.

{¶20} Collins now appeals his conviction, assigning the following errors for our review:

> I. The arresting officer had no valid reason for stopping the Defendant and initiating testing to determine whether or not the Defendant had consumed alcohol or was under the influence of an intoxicant.
>
> II. The arresting officer misstated comments and answers given by the Defendant and proceeded to ask the Defendant if he would perform a list of test[s] to [e]nsure that he was capable of continuing to drive.
>
> III. The arresting officer obtained the acquiescence of the Defendant to participating in the field sobriety test by telling the Defendant that he had to ascertain, through the tests, that the Defendant was capable of continuing to drive his vehicle.
>
> IV. [The] court denied the Defendant's Motion to Suppress.
>
> V. The court denied the Defendant's Motion to Dismiss even though the court proceedings prior to trial had continued far beyond the ninety (90) days required by law even though this Defendant had not signed or made any other indication that he was waiving his right to a speedy trial.

Law and Analysis

**{¶21}** In his pro se appeal, Collins essentially claims that the police unlawfully detained and arrested him, the trial court erred in denying his motion to suppress, and the trial court erred in denying his motion to dismiss based upon speedy trial grounds.

**{¶22}** In his first assignment of error, Collins argues that the police officer "had no valid reason" to stop him.

**{¶23}** The Fourth Amendment of the United States Constitution, as well as Article I, Section 14, of the Ohio Constitution, prohibit unreasonable searches and seizures lacking probable cause. *Cleveland Hts. v. Brisbane*, 2016-Ohio-4564, 70 N.E.3d 52, ¶ 14 (8th Dist.). This prohibition applies to the stopping of motor vehicles and the seizing of its occupants. *Id.*, citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), paragraph two of the syllabus.

**{¶24}** "A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 21, citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995). Furthermore, "when conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reason for which the vehicle was initially stopped." *Id.*, citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 17. This time period may include the time it takes to run a computer check on the driver's license, registration, and vehicle's plates. *Bennett*, citing *Prouse*.

**{¶25}** Where an officer stops a motorist after observing a violation of a traffic law, probable cause exists for the detention in order to issue a citation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996) (determining that where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution).

**{¶26}** R.C. 4511.33(A)(1) provides that a vehicle "shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Thus, the driver must remain within the lane markings "unless the driver cannot reasonably avoid straying." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 18.

**{¶27}** The Ohio Supreme Court held in *Mays* that a traffic stop is constitutionally valid when a law enforcement officer witnesses a motorist "drift" over lane markings, in violation of R.C. 4511.33 at syllabus (finding where the trooper observed appellant twice cross the white edge line, the trooper had reasonable suspicion and probable cause to stop the vehicle). "[W]hen an officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle." *Id.* at ¶ 20. A traffic stop is lawful even if the traffic violation is minor, or "de minimus." *Strongsville v. Spoonamore*, 8th Dist. Cuyahoga No. 86948, 2006-Ohio-4884, ¶ 12.

**{¶28}** Here, Trooper Morales testified that he observed Collins drive outside of the marked lane approximately four times, "at least a tire's width." And the video footage of the trooper's dashboard camera appears to support the trooper's testimony, depicting at least two instances where Collins's vehicle appears to cross the right edge line. Collins claims that the width of the highway lane was only 10 feet, which is in violation of the federally mandated 12 feet width. He argues that this difference in the width of the lane somehow contributed to his inability to drive within the marked lanes. Collins's defense of his actions, however, is not relevant to whether a law enforcement officer had a reasonable and articulable suspicion to initiate a traffic stop. *Mays* at ¶ 17; *Cleveland v. Martin*, 8th Dist. Cuyahoga No. 105420, 2018-Ohio-740, ¶ 7. "An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *Mays.* The initial traffic stop of Collins's vehicle was therefore lawful.

**{¶29}** Collins also contends that Trooper Morales "had no valid reason" to "initiate testing" to determine whether he was under the influence of alcohol.

**{¶30}** A police officer may request a motorist to perform field sobriety tests after the officer has stopped the vehicle for a minor traffic offense, when "the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated." *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998). Moreover, to evaluate the reasonableness of the request for field

sobriety tests, we consider "the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Dedejczyk* at ¶ 29, citing *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18.

{¶31} In *Evans*, the court enumerated a nonexhaustive list of factors that courts may consider in evaluating whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:

> (1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning);
>
> (2) the location of the stop (whether near establishments selling alcohol);
>
> (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.);
>
> (4) whether there is a cognizable report that the driver may be intoxicated;
>
> (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.);
>
> (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.);
>
> (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath;
>
> (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.);
>
> (9) the suspect's demeanor (belligerent, uncooperative, etc.);
>
> (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and
>
> (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*Evans* at 63, fn. 2. "All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." *Id.*

{¶32} Here, the incident occurred at almost 1:30 in the morning. Trooper Morales observed Collins's vehicle drive outside the marked lanes at least four times. When the trooper ran Collins's driver's license through LEADS, the computer showed that Collins was under an administrative license suspension for a "refusal" from a previous OVI stop that occurred approximately one month prior to this stop. When the trooper approached Collins, he observed Collins chewing gum. He asked him to spit the gum out, and when he did, the trooper smelled alcohol on Collins's breath. Collins denied having been drinking. Viewing the totality of circumstances through the eyes of a reasonable and prudent police officer, we believe the trooper reasonably suspected that Collins was driving while intoxicated and he was justified in extending the scope of the detention and requesting Collins to perform the field sobriety tests.

{¶33} In the second and third assignments of error, Collins makes certain statements concerning the stop: "The arresting officer misstated comments and answers given by the Defendant and proceeded to ask the Defendant if he would perform a list of test[s] to [e]nsure that he was capable of continuing to drive" and "The arresting officer obtained the acquiescence of the Defendant to participating in the field sobriety test[s] by telling the Defendant he had to ascertain, through the tests, that the Defendant was capable of continuing to drive his vehicle."

**{¶34}** We note that these assignments of error do not comply with App.R. 16(A)(7), which provides that an appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." The brief, at a minimum, must contain an argument that is supported by legal authority. *Inner City Living, Inc. v. Ohio Dept. of Dev. Disabilities*, 8th Dist. Cuyahoga No. 105255, 2017-Ohio-8317, ¶ 15, citing App.R. 16(A)(7). Where an appellant fails to comply with this rule, the reviewing court may disregard the assignment of error. *Young v. Kaufman*, 8th Dist. Cuyahoga Nos. 104990 and 105359, 2017-Ohio-9015, ¶ 44, citing App.R. 12(A)(2). Collins's second and third assignments of error are statements that do not include any legal support. We are therefore not obligated to consider them.

**{¶35}** Nevertheless, to the extent that Collins objects to the alleged "misstatements" of the trooper's testimony or what Collins did or did not say regarding his "acquiescence," we note that this testimony is a credibility issue and is therefore within the province of the jury. Where the appellant raises a factual issue, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. And the jury is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶36}** Here, the jury weighed the evidence and considered the credibility of the witnesses — Trooper Morales and Collins. In doing so, the jury determined Collins was guilty. We cannot substitute our own judgment for that of the factfinder on issues concerning witness credibility. *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986).

**{¶37}** Collins's first, second, and third assignments of error are overruled.

**{¶38}** Collins contends in his fourth assignment of error that the trial court "denied Defendant's Motion to Suppress." Although Collins once again fails to present an argument that is supported by legal authority, we presume from Collins's brief that Collins objects to Trooper Morales's administration of the field sobriety tests. Collins states that the trooper "slavishly performed a useless procedure known as the Vertical Gaze Nystagmus ("VGN"), which cannot show jittering up or down due to the natural top to bottom dimension of the normal eye." Collins also generally argues "many other types of errors and oversights in the methods and evaluations" of Trooper Morales, without legal support, including an allegation that the NHTSA prohibits an officer from performing field sobriety tests on individuals 65 years and older.

**{¶39}** In moving to suppress the results of a field sobriety test, the defendant must provide an "adequate basis" to seek suppression of the results, which include stating the legal and factual bases "'with sufficient particularity to place the prosecutor and [the] court on notice as to the issues contested.'" *State v. Hunter*, 8th Dist. Cuyahoga No. 91110, 2009-Ohio-1239, ¶ 24, citing *State v. Shindler*, 70 Ohio St.3d 54, 58,

1994-Ohio-452, 636 N.E.2d 319; Crim.R. 47. Where the defendant establishes an adequate basis, the prosecutor then bears the burden of demonstrating substantial compliance; and if the prosecutor demonstrates substantial compliance, the burden then shifts to the defendant to overcome the presumption of admissibility. *Hunter* at ¶ 25.

**{¶40}** This court reviews a denial of a motion to suppress under a mixed standard of review that involves questions of law and fact. *Cleveland v. Giering*, 8th Dist. Cuyahoga No. 105020, 2017-Ohio-8059, ¶ 12, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must therefore accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *Giering*; *Burnside*. The reviewing court, however, must independently determine whether those facts satisfy the applicable legal standard. *Id.*

**{¶41}** Under R.C. 4511.19(D)(4)(b), an officer may testify concerning the results of the field sobriety test if the officer administered the test in "substantial compliance" with the testing standards. Therefore, "in order for the results of the field sobriety tests to be admissible, the city must demonstrate by clear and convincing evidence that the officer performing the testing substantially complied with accepted testing standards." *State v. Hyppolite*, 8th Dist. Cuyahoga No. 103955, 2016-Ohio-7399, ¶ 47, citing *Middleburg Hts. v. Gettings*, 8th Dist. Cuyahoga No. 99556, 2013-Ohio-3536, ¶ 12;

*Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, at ¶ 42.   The city may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of   the NHTSA manual.   *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28; *see State v. Jackman*, 8th Dist. Cuyahoga No. 89835, 2008-Ohio-1944, ¶ 24 ("Under Ohio law, the state is not required to introduce the NHTSA guidelines or expert testimony.").

**{¶42}** Substantial compliance is not defined in R.C. 4511.19(D)(4)(b); therefore, courts have some discretion in determining the "'substantiability of the compliance.'" *Hyppolite* at ¶ 48, quoting *State v. Perry*, 129 Ohio Misc. 61, 2004-Ohio-7332, 822 N.E.2d 862, ¶ 45 (M.C.).   Thus, a determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis.   *Hyppolite*; *Dedejczyk* at ¶ 42.

**{¶43}** Trooper Morales conducted three field sobriety tests on Collins: the HGN test, the WAT test, and the OLS test.   Regarding the HGN test, a police officer must instruct a suspect according to the NHTSA manual as follows:

> "[A] police officer should instruct the suspect that they are going to check the suspect's eyes, that the suspect should keep their head still and follow the stimulus with their eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level.   The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth.   The officer then checks the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees."

*Cleveland v. Krivich*, 2016-Ohio-3072, 65 N.E.3d 279 (8th Dist.), ¶ 15, quoting *State v. Secoy*, 5th Dist. Muskingum No. CT2008-0065, 2009-Ohio-5100, ¶ 16.   Additionally, according to NHTSA standards, the officer must face a suspect away from flashing lights and traffic that is in close proximity to the subject.   *State v. Stritch*, 2d Dist. Montgomery No. 20759, 2005-Ohio-1376, ¶ 23.

**{¶44}** In evaluating the suspect for impairment, the police officer should look for three indicators: "(1) if the eye cannot follow a moving object smoothly, (2) if jerking is distinct when the eye is at maximum deviation, and (3) if the angle of onset of jerking is within 45 degrees of center."   *Krivich*, citing *S. Euclid v. Bautista-Avila*, 2015-Ohio-3236, 36 N.E.3d 246, ¶ 11 (8th Dist.).

**{¶45}** Our review of the record indicates that Trooper Morales substantially complied with NHTSA standards in administering the HGN test and found four out of the six clues of impairment.   The trooper testified that Collins exhibited lack of smooth pursuit and nystagmus with maximum deviation in both eyes.   On cross-examination, the trooper explained that the VGN is part of the HGN test and is "not taken into consideration as a clue."   According to Trooper Morales, four clues indicate impairment.

**{¶46}** Regarding the WAT test, the NHTSA manual provides the following instructions:

> [A]n officer is required to first instruct the suspect of the initial positioning, which requires the suspect to stand with his arms down at his side, and to place his left foot on a line (real or imaginary). The suspect's right foot is to be placed on the line ahead of the left foot, with the heel of the right foot against the toe of the left foot. The suspect is then told to remain in that position while further instructions are given.

*Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, at ¶ 52, citing *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 43. Additionally, during this test, the suspect "walks while touching his heel to his toe for every step, counting the nine steps out loud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line." Finally, the officer must demonstrate three heel-to-toe steps. *Brookpark v. Key*, 8th Dist. Cuyahoga No. 89612, 2008-Ohio-1811, ¶ 89.

**{¶47}** Again, we find the record demonstrates that Trooper Morales substantially complied with the NHTSA standards concerning the WAT test. He properly instructed Collins regarding the process, and he demonstrated the test for Collins. The trooper testified that he observed three out of a possible eight clues of impairment during this test — beginning before instructed, not touching heel-to-toe, and incorrectly turning. Trooper Morales testified that two clues are indicative of impairment. The trooper stated that he took into consideration Collins's age (70 years old at the time of the incident) in the performance of the WAT test; however, there is no NHTSA prohibition on administering this test on someone of Collins's age.

**{¶48}** Concerning the OLS test, the NHTSA manual requires

the officer to instruct subjects to begin the test with their feet together and keep their arms at their side for the entire test. The officer must also tell the suspects that they must raise one leg, either leg, six inches from the ground and maintain that position while counting out loud for thirty seconds. NHTSA standards provide that the counting should be done in the following manner: "one thousand and one, one thousand and two, until told to stop."

*Dedejczyk* at ¶ 49, quoting *Clark* at ¶ 36.

{¶49} We find once again that Trooper Morales substantially complied with NHTSA standards in administering the OLS test. He testified that Collins indicated he had difficulty with his right leg, but the trooper gave Collins the option of not performing the test and Collins chose to proceed with the test. Trooper Morales observed two of the six possible clues of impairment — swaying while counting and dropping a foot. Two clues are indicative of impairment. The trooper stated, and the video depicts, that Collins "basically almost fell at one point in time."

{¶50} Based upon the uncontradicted testimony of Trooper Morales, we find that the trial court relied upon competent, credible evidence in determining that the trooper's administration of the field sobriety tests substantially complied with the NTHSA standards. Collins's fourth assignment of error is therefore overruled.

{¶51} In his final assignment of error, Collins contends that the trial court erred when it denied his motion to dismiss based upon speedy trial violations. He argues that speedy trial time was violated due to motions made by the prosecutor, delays in receiving discovery, and other extensions such as the prosecutor's or arresting officer's unavailability.

{¶52} R.C. 2945.71(B)(2) provides that a defendant charged on a first-degree misdemeanor must be brought to trial within 90 days after arrest or service of summons. The statutory speedy trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy trial time. *State v.*

*Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 44. If the defendant is not arrested for the offense, speedy trial time begins on the day he is served with the indictment. *State v. Pirkel*, 8th Dist. Cuyahoga No. 93305, 2010-Ohio-1858, ¶ 12.

{¶53} Speedy trial time may, however, be tolled by certain events delineated in R.C. 2945.72. These events include: delay "necessitated by the accused's lack of counsel"; delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused, and any continuances granted upon the accused's own motion"; the "period of any continuance granted on the accused's own motion" as well as the period of "any reasonable continuance granted" upon any other party's motion; and the time during which an appeal is pending. R.C. 2945.72(C), (E), (H), and (I).

{¶54} A defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery, or for a reasonable time, whichever is sooner. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E). This court has interpreted "reasonable response time" to mean 30 days. *See Shabazz* at ¶ 26; *State v. Byrd*, 8th Dist. Cuyahoga No. 91433, 2009-Ohio-3283, ¶ 9; *State v. Barb*, 8th Dist. Cuyahoga No. 90768, 2008-Ohio-5877, ¶ 9. However, what is reasonable or necessary is determined on a case-by-case basis. *Pirkel* at ¶ 17, citing *State v. Saffell*, 35 Ohio St.3d 90, 518 N.E.2d 934 (1988).

{¶55} Moreover, motions filed by the defendant tolls the speedy trial time under R.C. 2945.72(E) for a "reasonable period" to allow the prosecution an opportunity to

respond and the court an opportunity to rule. *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 26. A motion to suppress evidence, for example, will toll the speedy trial time. *State v. Gibson*, 8th Dist. Cuyahoga No. 100727, 2014-Ohio-3421, ¶ 20.

**{¶56}** Motions to continue that are filed by the prosecution may also toll speedy trial time so long as the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186. *Shabazz* at ¶ 29. Specifically, a prosecutor's motion to continue based upon the unavailability of a witness will toll the speedy trial provisions if the length of the delay is reasonable. *Shabazz* citing *Saffell; see also State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d 1095 (1976) (The reasonableness of a continuance is determined by examining the purpose and length of the continuance.). And finally, scheduling and docketing conflicts are reasonable grounds for extending an accused's trial date beyond the speedy trial time. *Gibson* at ¶ 19, citing *Lee*; *Saffell* at 92.

**{¶57}** We must strictly construe any ambiguity in the record in favor of the accused. *State v. Scahel*, 8th Dist. Cuyahoga No. 102557, 2016-Ohio-18, ¶ 10.

**{¶58}** Here, Collins was cited on September 24, 2014. He was arraigned on September 29, 2014, at which time a judge was assigned and a pretrial scheduled for October 9, 2014. At this point, the speedy trial time was 15 days.

**{¶59}** During the October pretrial, Collins was not represented and he was informed of his right to counsel. He filed a demand for discovery, and the pretrial was

continued at Collins's request until November 5, 2014. At the continued pretrial, Collins waived his right to counsel. The record indicates that discovery was ongoing and Collins requested a continuance until November 26, 2014.

{¶60} Collins contends that the trooper "kept forgetting" to bring to court the requested video demanded during discovery and this failure caused "several delays." We note, however, that there is no evidence in the record that the trooper caused any delays; rather, the court's docket indicates that the pretrials were continued at the defendant's request. Moreover, even if the trooper did, in fact, fail to turn over the video at some point during these pretrial proceedings, we cannot find this delay unreasonable, nor do we find it counted toward Collins's speedy trial time. The discovery demand was made on October 9, which tolls the speedy trial time for a reasonable response time of 30 days, and on November 12, 2014, Collins filed a motion to suppress, which also tolls the speedy trial time. The period of time between Collins's discovery demand and his motion to suppress was 34 days. Under the circumstances, we find Collins's speedy trial time was tolled during this period.

{¶61} On November 26, 2014, Collins filed a supplemental motion to suppress, which further tolled the speedy trial time. The city filed its timely opposition to Collins's motions to suppress and a response to Collins's discovery demand on December 3, 2014. The trial court held a hearing on Collins's motion on December 17, 2014, which was within 30 days of the filing of the motion and therefore presumptively

reasonable.  The court denied Collins's motion to suppress on January 7, 2015, which was also a reasonable time.   All of this time was therefore tolled.

{¶62} On January 15, 2015, Collins filed his motion to dismiss for speedy trial violations pursuant to R.C. 2945.71.   The period of time between the court's ruling on Collins's motion to suppress and Collins's filing of the motion to dismiss was 8 days, thereby providing a total of 23 days on the speedy trial clock.   His motion to dismiss tolls the time period yet again, until the motion is ruled upon.   There is no record in this case, however, of the court ruling on this motion.   As such, it is deemed denied.   *State v. Carter*, 8th Dist. Cuyahoga No. 104653, 2017-Ohio-5573, ¶ 3.   And in calculating the speedy trial time for the court to rule on Collins's motion, we apply a reasonable 30-day time period.   *See Gibson*, 8th Dist. Cuyahoga No. 100727, 2014-Ohio-3421, at ¶ 22. Thus, the time is tolled until February 15, 2015.

{¶63} The court's docket indicates that a bench trial scheduled for February 5, 2015, was continued at the prosecutor's request to February 19, 2015.   There is no reason stated, and no apparent motion filed.[1]   And on February 19, the record shows that this hearing was continued per Collins's request and the court scheduled a jury trial for April 2, 2015.   In strictly construing any ambiguity in the record in favor of Collins, we charge an additional 4 days to the city — from February 15, when the last tolling period ended, to February 19, when Collins requested a continuance that commenced a new tolling event.   The speedy trial time up to this point was 27 days.

---

[1]   The city asserts in its appellee brief that the prosecutor requested this continuance due to

**{¶64}** On March 25, 2015, the prosecutor filed a motion to continue the jury trial scheduled for April 2, 2015. The prosecutor stated that it was the city's first continuance requested of the jury trial, noting that the trial was scheduled in his absence while he was on bereavement leave, and he was unavailable on that April date due to a conflict. The court continued the trial until April 30, 2015. Finding the record demonstrates the need for a continuance and the request is reasonable, we find the prosecutor's motion is a tolling event.

**{¶65}** We note, that even if we were to find the prosecutor's request unreasonable, thus charging the additional 28-day period to the state, Collins's speedy trial time would have amounted to 55 days at this point, which is within the statutory speedy trial time.

**{¶66}** On April 30, the trial was continued once again, this time at Collins's request, and the court rescheduled the trial for May 28, 2015. On this May date, Collins signed a waiver of speedy trial, consenting to a continuance of the matter beyond the statutory period. At this point, based on our calculations, and considering the numerous tolling events, only 27 days of speedy trial time had elapsed, which is well below the 90 days for a speedy trial.

**{¶67}** Collins's right to a speedy trial was therefore not violated. Accordingly, Collins's fifth assignment of error is overruled.

**{¶68}** Judgment affirmed.

---

its witness, Trooper Morales, attending training. The court's record, however, contains no explanation for the continuance.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR