[Cite as *State v. Sanders*, 2019-Ohio-1524.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 107253

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**GARY SANDERS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; MODIFIED IN PART;
REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-18-625311-A

**BEFORE:** E.A. Gallagher, J., E.T. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 25, 2019

**ATTORNEY FOR APPELLANT**

John T. Castele
565 W. Bagley Road
Berea, Ohio   44017


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Caitlin E. Monter
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Gary Sanders appeals his conviction for domestic violence following a jury trial.  He contends that his third-degree felony conviction should be reversed because his statutory and constitutional speedy trial rights were violated and the verdict form returned by the jury was defective.  He also contends that the trial court erred in sentencing him to a maximum three-year prison sentence and in imposing five years of postrelease control.  For the reasons that follow, we reduce Sanders' domestic violence conviction to a fourth-degree felony and remand the matter to the trial court for the limited purpose of resentencing Sanders on the offense as a fourth-degree felony.  We affirm the trial court's judgment in all other respects.

**Factual Background and Procedural History**

{¶2} On January 21, 2018, Sanders was arrested after he was allegedly involved in an altercation with his girlfriend, A.V.  Sanders and A.V. had been arguing when Sanders allegedly

grabbed A.V. by the neck, "started choking [her] out," and pushed her onto the bed. When A.V. threatened to call the police, Sanders allegedly threatened her and her mother. At the time of the incident, A.V. and Sanders lived together and A.V. was pregnant with Sanders' child. A.V. called 911, left her home with the assistance of a friend and went to the police station to report the assault.

{¶3} The following day, A.V. signed a domestic violence waiver and a "no prosecution form" indicating that she did not wish to prosecute Sanders for domestic violence. The trial court set Sanders' bond at $50,000 and issued a no-contact order, precluding Sanders from having any contact with the victim. Despite acknowledging that he was to have no contact with A.V., on January 23, 2018, Sanders spoke to A.V. from jail. During a three-way telephone conversation, he instructed A.V. to "go to the prosecutor's office and tell them you want to drop this s***." A.V. informed Sanders that she had already "signed papers" to drop the charges and indicated that she was concerned that she would "catch a case" for "falsifying a police report."

{¶4} On January 30, 2018, a Cuyahoga County Grand Jury indicted Sanders on one count of domestic violence in violation of R.C. 2919.25(A), a third-degree felony. The indictment included a furthermore specification clause alleging prior convictions for domestic violence, attempted domestic violence and attempted abduction and that Sanders knew A.V. was pregnant at the time he committed the offense against her. Sanders pled not guilty.

{¶5} On February 6, 2018, Sanders submitted a demand for discovery pursuant to Crim.R. 16. The state served its response along with its own demand for discovery the following day.

**{¶6}** Trial was originally scheduled for March 27, 2018. On March 23, 2018, Sanders posted bond. Although A.V. had been subpoenaed to testify and had informed the prosecutor that she would appear for trial, she did not appear in court for trial as scheduled. The prosecutor indicated that A.V. had recently had a baby and that she had attempted to contact A.V. that morning but was unable to reach her. The state requested a continuance based on A.V.'s failure to appear. Sanders opposed the request for continuance. On March 27, 2018, the court continued the trial "at the state's request" until April 9, 2018 and revoked Sanders' bond after it learned that Sanders had violated the no-contact order imposed as a condition of his bond.

**{¶7}** On April 9, 2018, A.V., once again, failed to timely appear for trial, and the state filed a motion for a material witness warrant. The trial court granted the motion, continued the trial date and issued a bench warrant for A.V.'s arrest. Sanders objected to the continuance, asserting his right to a speedy trial. The trial court indicated that the trial would be "on standby" and would begin as soon as A.V. was brought into custody. A.V. appeared at court four hours later. The trial court cancelled the bench warrant, reset the trial for April 23, 2018 and advised A.V. that she would be arrested if she did not appear for trial.

**{¶8}** The state subpoenaed A.V. for trial on April 23, 2018, but, again, she failed to appear. The trial court issued a bench warrant for her arrest. The trial court continued the trial to April 24, 2018 and then to April 30, 2018 "at the request of [the] court." On April 30, 2018, the trial court issued an order, journalized on May 1, 2018, that "[t]rial [was] on hold until the victim is taken into custody." A.V. was taken into custody, and trial commenced on May 3, 2018.

**{¶9}** On the morning of trial, Sanders orally moved to dismiss the case, asserting that his statutory and constitutional rights to a speedy trial had been violated. The trial court denied the

motion, reasoning that Sanders should not be "rewarded with a case dismissal due to a speedy trial rights violation" because the delays were at least, in part, attributable to Sanders' violation of the no-contact order. As the trial court explained:

> All the delays in this case are a result of [A.V.'s] refusal to come in and it is clear that the encouragement to not cooperate was brought by Mr. Sanders in violation of the previously issued No-contact Order with the victim.

**{¶10}** Prior to trial, Sanders' counsel indicated that Sanders would stipulate (1) to "the validity of [Sanders' prior] convictions releasing the State from the necessity of forcing the issue" and (2) that "there is physical harm in this case." Sanders also stipulated that A.V. was a family or household member.

**{¶11}** A.V., the patrol officer who arrested Sanders and the detective who investigated the incident testified at trial.

**{¶12}** On May 7, 2018, the jury returned its verdict. It found Sanders guilty of domestic violence as charged in the indictment and made further findings that (1) Sanders had previously been convicted of "domestic violence and attempted domestic violence," (2) Sanders had previously been convicted of attempted abduction and (3) Sanders knew A.V. was pregnant at the time of the offense.

**{¶13}** At the sentencing hearing, the trial court sentenced Sanders to 36 months in prison and imposed three years of mandatory postrelease control. In its May 9, 2018 sentencing journal entry, however, the trial court imposed five years of mandatory postrelease control.

**{¶14}** Sanders appealed his convictions, raising the following four assignments of error for review:

> Assignment of Error I: The trial court erred in denying defendant's motion to dismiss based on a violation of his constitutional and statutory speedy trial rights.

Assignment of Error II: The defendant was denied his right to due process when incorrect jury verdict forms were provided to and returned by the jury.

Assignment of Error III: The trial court erred in sentencing the defendant to a maximum three years in prison, and thus defendant's sentence is contrary to law.

Assignment of Error IV: The trial court erred in imposing five years of post-release control in its sentencing journal entry.

**Law and Analysis**

**Speedy Trial**

**{¶15}** In his first assignment of error, Sanders contends that the charge against him should have been dismissed because his constitutional and statutory speedy trial rights were violated.

**{¶16}** A defendant is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution. *See, e.g.*, *State v. Williams*, 8th Dist. Cuyahoga No. 100898, 2014-Ohio-4475, ¶ 51, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32. Pursuant to its authority to prescribe reasonable periods in which a trial must be held that are consistent with these constitutional requirements, Ohio enacted R.C. 2945.71, which sets forth the specific time requirements within which the state must bring a defendant to trial. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 14.

**{¶17}** Under R.C. 2945.71(C)(2), the state is required to bring a defendant to trial on felony charges within 270 days of arrest. Under the "triple count provision" in R.C. 2945.71(E), each day a defendant is held in jail in lieu of bail counts as three days in the speedy trial time calculation. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 19. Speedy trial time may, however, be tolled by certain events delineated in R.C. 2945.72,

including where the defendant's improper actions or neglect causes delay or for "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(D) and (H). Extensions of the speedy trial time limits under R.C. 2945.72 are strictly construed against the state. *State v. Brown*, 2016-Ohio-1453, 63 N.E.3d 509, ¶ 6 (4th Dist.); *see also State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 81 ("Speedy-trial provisions are mandatory, and courts must strictly enforce them."); *State v. Linder*, 8th Dist. Cuyahoga No. 106600, 2018-Ohio-3951, ¶ 80 (when reviewing legal issues presented in a speedy trial claim, the appellate court must strictly construe the relevant statutes against the state), citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶18} Once the statutory time limit has expired, the defendant has established a prima facie case for dismissal. *State v. Willis*, 8th Dist. Cuyahoga No. 107070, 2019-Ohio-537, ¶ 25, citing *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986); *State v. Steele*, 8th Dist. Cuyahoga Nos. 101139 and 101140, 2014-Ohio-5431, ¶ 18. The burden then shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *Willis* at ¶ 25; *Steele* at ¶ 18.

{¶19} When reviewing a speedy trial issue, the appellate court counts the days and determines whether the number of days not tolled exceeds the time limits for bringing the defendant to trial as set forth in R.C. 2945.71. *See, e.g., State v. Shepherd*, 8th Dist. Cuyahoga No. 97962, 2012-Ohio-5415, ¶ 14-16. Appellate review of a speedy trial issue involves mixed questions of law and fact. *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, ¶ 9. The appellate court defers to the trial court's findings of fact, if any, provided the findings are supported by competent, credible evidence in the record. It applies a de novo review to legal issues and independently reviews whether the trial court properly applied

the law to the facts. *See, e.g., State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 128. If the state has violated a defendant's right to a speedy trial, then, upon motion made at or prior to trial, the defendant "shall be discharged," and further criminal proceedings based on the same conduct are barred. R.C. 2945.73(B); *see also Geraci*, 2015-Ohio-2699, at ¶ 20.

{¶20} Sanders was arrested on January 21, 2018. The statutory speedy trial period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when calculating speedy trial time. *Westlake v. Collins*, 8th Dist. Cuyahoga No. 106968, 2019-Ohio-453, ¶ 16; *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 44. For all but four of the days following his arrest, Sanders was held in jail, invoking the triple-count provision. The statutory speedy trial time would have expired, if not tolled, on April 25, 2018. Sanders' trial was held eight days later on May 3, 2018.

{¶21} Although Sanders presented a prima facie case for discharge based on the expiration of the statutory speedy trial time under R.C. 2945.71, the state met its burden of showing an extension of the statutory speedy trial time under R.C. 2945.72.

{¶22} From January 22 until February 6, 2018, 45 three-for-one speedy trial days (15 days x 3) ran. On February 6, 2018, Sanders served a demand for discovery pursuant to Crim.R. 16. A defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery or for a reasonable time, whichever is sooner. *Collins* at ¶ 18; *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E). The state served its responses to Sanders' demand for discovery requests the following day. Accordingly, speedy trial time was tolled one day from February 6 to February 7, 2018.

{¶23} On February 7, 2018, the state served its own demand for discovery. The record reflects that Sanders never responded to the state's demand for discovery. "The failure of a

criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of the syllabus; *see also State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 37. What constitutes a reasonable amount of time within which a defendant should have responded to a reciprocal discovery request is for the trial court to determine "based on the totality of facts and circumstances in the case." *Palmer* at paragraph three of the syllabus. Sanders does not address this tolling event in his brief. There is nothing in the record that indicates why Sanders failed to respond to the state's demand for discovery.

**{¶24}** This court has generally considered 30 days to be a "reasonable" response time when applying R.C. 2945.72. *See Geraci*, 2015-Ohio-2699, at ¶ 26. Sanders does not contend that he could not have reasonably responded to the state's demand for discovery within 30 days and there is nothing in the record that suggests otherwise. Using 30 days as a reasonable response time, Sanders' speedy trial time ran again from February 7, 2018 (when the state served its demand for discovery) until March 9, 2018 (when Sanders reasonably should have responded to the state's demand for discovery). As of that time, a total of 135 three-for-one speedy trial days had elapsed ((15 days + 30 days) x 3). The speedy trial time was thereafter tolled due to Sanders' neglect in failing to respond to the state's demand for discovery. *Palmer* at paragraph one of the syllabus; *see also Burks* at ¶ 38; *State v. Garner*, 8th Dist. Cuyahoga No. 102816, 2016-Ohio-2623, ¶ 29; *Geraci* at ¶ 26.

**{¶25}** Even if Sanders' speedy trial time had not been tolled by his failure to respond to the state's demand for discovery, it still would have otherwise been tolled under R.C. 2945.72(D) and/or (H).

**{¶26}** Trial was originally set for March 27, 2018. Putting aside the issue of Sanders' failure to respond to the state's demand for discovery, by March 27, 2018, 181 speedy trial days had run ((59 days x 3) + 4 days while out on bond), leaving 89 speedy trial days within which to try Sanders under R.C. 2945.72.

**{¶27}** Under R.C. 2945.72, the time within which a defendant must be brought to trial may be extended by both "[a]ny period of delay occasioned by the * * * improper act of the accused" and "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(D), (H). "Reasonableness is determined by examining the purpose and length of the continuance, which must be affirmatively demonstrated by the record." *Willis*, 2019-Ohio-537, at ¶ 61; *see also Cleveland v. Collins*, 2018-Ohio-958, 109 N.E.3d 208, ¶ 56 (8th Dist.) ("Motions to continue that are filed by the prosecution may * * * toll speedy trial time so long as the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof."). The reasonableness of a delay is dependent on the particular facts and circumstances of the case. *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988).

**{¶28}** The unavailability of a key witness may constitute a reasonable and necessary ground for a continuance under R.C. 2945.72(H) if the length of the continuance is reasonable. *See, e.g., Saffell* at 91-92 (continuance of trial date to accommodate planned vacation of arresting officer was reasonable and tolled the speedy trial clock pursuant to R.C. 2945.72(H)); *Shepherd*, 2012-Ohio-5415, at ¶ 23 (request for 20-day continuance to compel state's main witness to appear was reasonable and tolled speedy trial time); *State v. Watkins*, 3d Dist. Allen No. 1-18-32, 2018-Ohio-5055, ¶ 19 (speedy trial time tolled where state filed a motion to continue the trial because it could not locate the victim, its "key" witness, despite numerous attempts to serve her with a subpoena); *State v. Johnson*, 5th Dist. Licking No. CT2016-0041,

2017-Ohio-1043, ¶ 25-27 (26-day continuance of trial date because forensic scientist was unavailable to testify was reasonable and necessary and tolled the speedy trial time under R.C. 2945.72(H))*; Brown*, 2016-Ohio-1453, 63 N.E.3d 509, at ¶ 12-13 (trial court's granting of state's request for a continuance due to the unavailability of expert witness tolled the speedy trial clock).

{¶29} In this case, the record clearly shows that each of the delays in trying Sanders was due to A.V.'s failure to appear for trial. On March 27, 2018, the trial court continued the trial "at the state's request" until April 9, 2018. Even if that continuance were to be charged against Sanders' speedy trial time, by April 9, 2018, 220 speedy trial days had run. The trial court thereafter continued the trial several additional times — on April 9, 2018, April 23, 2018, April 24, 2018 and April 30, 2018 — in order to secure A.V.'s appearance for trial.

{¶30} A.V. was the state's principal witness. The record reflects that the state used due diligence in attempting to secure her appearance at trial. The state had subpoenaed A.V. to testify at trial and had spoken with her, originally receiving her assurances that she would appear to testify. When A.V. failed to appear, the state promptly requested a bench warrant. When A.V. continued to ignore the trial court's directives to appear, a bench warrant was issued for her arrest and the trial was placed on "standby" until A.V. was taken into custody pursuant to the bench warrant.

{¶31} The continuances to secure A.V.'s appearance at trial ultimately extended the time period within which the state was to try Sanders by eight calendar days — from April 25, 2018 to May 3, 2018. Based on a thorough examination of the record, we find that both the trial court's justification for granting the continuances and the periods of the continuances were reasonable and necessary. Accordingly, Sanders' statutory right to a speedy trial was not violated.

**Constitutional Right to Speedy Trial**

**{¶32}** Although Sanders asserts that his constitutional right to a speedy trial was violated, his argument in his brief focuses solely upon his statutory right to a speedy trial; he fails to make any argument relating to his constitutional right to a speedy trial. For this reason alone we could overrule Sanders' assignment of error to the extent it is based upon an alleged violation of his constitutional right to a speedy trial. App.R. 12(A)(2), 16(A)(7); *see also Geraci*, 2015-Ohio-2699, at ¶ 28, fn. 5; *Wells*, 2013-Ohio-3722, at ¶ 55. However, even if we were to consider the issue, we would find that Sanders' constitutional right to a speedy trial was not violated.

**{¶33}** In determining whether a defendant's constitutional right to a speedy trial has been violated, the court balances four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial and (4) prejudice to the defendant as a result of the delay. *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 88; *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997); *Barker v. Wingo*, 407 U.S. 514, 530-532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The first factor — the length of the delay — is a "triggering mechanism," that "'determin[es] the necessity of inquiry into the other factors.'" *State v. Robinson*, 8th Dist. Cuyahoga No. 105243, 2017-Ohio-6895, ¶ 9, quoting *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290 (1997); *see also Adams* at ¶ 89 ("[B]efore engaging in any balancing test under *Selvage* and *Barker*, the court must make a threshold determination concerning the length of delay."). "'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" (Emphasis deleted.) *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 23, quoting *Barker* at 530. If the initial showing of a "presumptively prejudicial" delay is met, the court then considers the length of delay along with the other factors. *State v. Duncan*,

8th Dist. Cuyahoga No. 97208, 2012-Ohio-3683, ¶ 8, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *see also Barker* at 530-531. "A delay becomes presumptively prejudicial as it approaches one year in length." *Adams* at ¶ 90, citing *Doggett* at 652, fn. 1; *see also State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 41.

{¶34} In this case, Sanders was arrested on January 21, 2018 and his jury trial commenced on May 3, 2018, less than four and one-half months after his arrest. Sanders does not argue that this period of delay was presumptively prejudicial. Because Sanders has failed to make a threshold showing of a presumptively prejudicial delay, an analysis of the other factors is unnecessary. *See, e.g., Williams*, 2014-Ohio-4475, at ¶ 61 (no constitutional violation of defendant's speedy trial rights in case that was pending for less than seven months because defendant did not make the threshold showing that delay was presumptively prejudicial); *Shepherd*, 2012-Ohio-5415, at ¶ 31 (defendant did not meet the "threshold requirement" where seven months elapsed between arrest and trial); *Duncan* at ¶ 9-10 (defendant was not deprived of his constitutional right to a speedy trial where six months elapsed from beginning of the case until the plea because the delay "did not meet the threshold requirement of presumptive prejudice"); *Geraci*, 2015-Ohio-2699, at ¶ 28 (four and one-half month period from defendant's arrest until he entered his guilty pleas did not constitute a "'presumptively prejudicial' delay"). Even if, however, we were to consider the other factors, we cannot say that Sanders' constitutional right to a speedy trial was violated.

{¶35} As detailed above, less than four and one-half months elapsed between the time of Sanders' arrest and his trial. The trial was delayed a total of five weeks from the originally scheduled March 27, 2018 trial date in order to secure the attendance of A.V. — the victim and

the state's primary witness — at trial. This period of delay was reasonable under the circumstances. There was evidence that Sanders, in violation of a no-contact order, had encouraged A.V. not to cooperate. In addition, A.V., the victim, had just recently given birth to Sanders' child and the trial court was understandably reluctant to issue a bench warrant for her arrest as a material witness if other arrangements could be made for her to appear voluntarily. When those efforts failed, the trial court issued a bench warrant for her arrest and promptly commenced trial after she was brought into custody. Sanders has not alleged, much less demonstrated, any prejudice resulting from the delay in his trial date. Accordingly, Sanders' first assignment of error is overruled.

**Verdict Form**

{¶36} In his second assignment of error, Sanders contends that he was denied due process because the verdict form signed by the jury was insufficient to support his conviction for domestic violence as a third-degree felony under R.C. 2945.75(A)(2).

{¶37} In this case, Sanders was charged with domestic violence in violation of R.C. 2919.25(A), a third-degree felony, based on two alleged prior convictions (1) a prior conviction for "Domestic Violence and Attempted Domestic Violence * * * in violation of R.C. §2923.02/2919.25(A)" in August 2016 and (2) a conviction for "Attempted Abduction * * * in violation of R.C. §2923.02/2905.02(A)(1)" in July 2012.

{¶38} In the absence of any additional elevating elements, a violation of R.C. 2919.25(A) is a first-degree misdemeanor. R.C. 2919.25(D)(2). A violation of R.C. 2919.25(A) is a fourth-degree felony if the defendant

> previously has pleaded guilty to or been convicted of domestic violence, a
> violation of an existing or former municipal ordinance or law of this or any other
> state or the United States that is substantially similar to domestic violence, a

violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Revised Code if the victim of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense * * *.

R.C. 2919.25(D)(3).

{¶39} A violation of R.C. 2919.25(A) is a third-degree felony if the defendant previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses * * *.

R.C. 2919.25(D)(4). A violation of R.C. 2919.25(A) is a fifth-degree felony if the defendant knew that the victim was pregnant at the time of the offense. R.C. 2919.25(D)(5).

{¶40} At trial, Sanders stipulated to the validity of his prior convictions, and copies of the judgment entries for those convictions were admitted into evidence. With respect to this stipulation and the evidence of Sanders' prior convictions, the trial court instructed the jury as follows:

THE COURT: Okay, the jury will understand that Exhibits 1 and 2 represent prior convictions of Mr. Sanders that are referenced in the indictment and that they need not be proven by the State[;] they have to be accepted as fact.

* * *

THE COURT: The defendant, Gary Sanders, is charged in the indictment with domestic violence in violation of Revised Code Section 2919.25(A). Before you can find the defendant guilty of domestic violence you must find, beyond a reasonable doubt, that on or about the 21st of January, 2018, in Cuyahoga County, Ohio, the defendant did knowingly cause or attempt to cause physical harm to [A.V.], a family or household member. Furthermore, the offender previously had

pled guilty to or been convicted of two offenses; to wit, domestic violence and Gary Sanders, with counsel, did so on or about the 22nd day of August, 2016, in the Court of Common Pleas, Cuyahoga County, Ohio, in Case Number 16-CR-604434, having been convicted of attempted domestic violence; and an offense of violence and the victim of the offense was a family or household member at the time of the offense.

And Gary Sanders, on or about the 17th day of July, 2012, in the Court of Common Pleas, Cuyahoga County, Ohio in Case Number 12-CR-561683 was convicted of attempted abduction. Additionally, the offender knew that the victim of the violation in this case was pregnant at the time of the violation. Now, the defense has stipulated to the prior — two prior convictions and you will have those exhibits; no further evidence need be brought on those.

* * *

Use of prior conviction enhancing the degree of the offense. Now, evidence was received — it was stipulated to that the defendant was convicted of attempted domestic violence and attempted abduction on prior occasions. That evidence was received because a prior conviction is an element of the offense charged. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or in accordance with that character. * * *

{¶41} Following their deliberations, the jury returned a signed verdict form, which stated:

## VERDICT

We, the Jury in this case being duly empaneled and sworn, do find the Defendant, Gary Sanders, (*) **GUILTY** of Domestic Violence, in violation of §2919.25(A) of the Ohio Revised Code, as charged in the Indictment.

* * *

## FURTHER FINDING:
## NOTICE OF PRIOR CONVICTION — R.C. §2929.13

We, the Jury in this case, further find and specify that the Defendant, Gary Sanders (**) **WAS** previously convicted of or pleaded guilty to Domestic Violence and Attempted Domestic Violence on or about the 22nd day of August, 2016, in the Common Pleas Court, Cuyahoga County, Ohio, Case No. CR 16 604434, in violation of R.C. §2923.02/2919.25(A); and having been convicted of Attempted Abduction on or about the 17th day of July, 2012, in the Common

Pleas Court, Cuyahoga County, Ohio, Case No. CR 12 561683, in violation of R.C. §2923.02/2905.02(A)(1).

\* \* \*

**FURTHER FINDING:**
**PREGNANT VICTIM**

We, the Jury in this case, find that the Defendant, Gary Sanders, is guilty of Domestic Violence, and we do further find that the Defendant (\*\*\*) **DID** know the victim, [A.V.], was pregnant time [sic] of the offense.

**{¶42}** Sanders contends that the verdict form returned by the jury was insufficient to elevate his domestic violence offense to a third- or fourth-degree felony because: (1) the jury found that Sanders was previously convicted of "Domestic Violence *and* Attempted Domestic Violence" in Cuyahoga C.P. No. CR-16-604434 — when his prior conviction in that case was for a single offense of attempted domestic violence — and (2) the verdict form omitted the "specific and necessary finding" that Sanders' prior conviction for attempted abduction involved a person who was a family or household member at the time of the commission of the offense.[1] (Emphasis added.) He argues that because the verdict form failed to comply with R.C. 2945.75(A)(2), the jury's verdict should constitute "a finding of guilty of the least degree of the offense charged," i.e., a fourth-degree felony — if one of his prior convictions is "negated" — or a fifth-degree felony — if both of his prior convictions are "negated."[2]

**{¶43}** R.C. 2945.75(A)(2) provides, in relevant part:

---

[1]Sanders concedes that his prior conviction for attempted abduction could have elevated the degree of his current domestic violence offense under R.C. 2919.25(D) if the jury had found that the victim of that offense was a family or household member at the time of the commission of the offense.

[2]Sanders concedes that the jury's finding in the verdict form that Sanders knew A.V. was pregnant at the time of the offense was sufficient to raise the level of the offense to a fifth-degree felony. *See* R.C. 2919.25(D)(5).

When the presence of one or more additional elements makes an offense one of more serious degree: * * * A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶44} When a verdict form includes some elevating elements, but not others, a defendant may only be convicted of the least degree of the offense that includes those elements specified in the verdict form. *State v. Westbrook*, 4th Dist. Scioto No. 09CA3277, 2010-Ohio-2692, ¶ 58, citing *State v. Ligon*, 179 Ohio App.3d 544, 2008-Ohio-6085, 902 N.E.2d 1011, ¶ 20 (3d Dist.).

{¶45} There is no dispute that the verdict form in this case did not state the degree of the offense of which Sanders was found guilty. Accordingly, we must consider whether the verdict form "state[s]" the "additional elements" necessary to elevate the offense to a third-degree felony and, if not, whether such error mandates a reduction of the degree of the offense of which Sanders has been convicted.

{¶46} Sanders did not object to the verdict form below. Where a defendant fails to object to a matter below, the defendant is generally deemed to have forfeited all but plain error. To demonstrate plain error, the defendant must show (1) "an error, i.e., a deviation from a legal rule," (2) that was "an 'obvious' defect in the trial proceedings" and (3) "affected a substantial right," i.e., that the outcome of the trial would have been different absent the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Notice of plain error is to be taken "'with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Id.,* quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

**{¶47}** Three Ohio Supreme Court decisions — *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, and *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374 — have led to some confusion regarding what is required to comply with R.C. 2945.75(A)(2) and to what extent a failure to strictly comply with R.C. 2945.75(A)(2) is subject to a plain-error analysis where, as here, the defendant did not object to the allegedly defective verdict form below. Sanders directs us to *Pelfrey* in arguing that the "faulty verdict forms were insufficient" to find him guilty of a third-degree felony. The state points to *Eafford* in arguing that "[e]ven when there are omissions in references to the degree of an offense of the verdict form * * * there is no [plain] error if the use of that form would not have affected the outcome of the trial."

**{¶48}** In *Pelfrey*, the defendant was charged with tampering with records. The offense would have been a misdemeanor except that the records at issue were government records, which elevated the offense to a third-degree felony. *Pelfrey* at ¶ 3, 13. A jury found Pelfrey guilty, and he was convicted of the offense as a third-degree felony. *Id.* at ¶ 3.

**{¶49}** The verdict form signed by the jury failed to set forth either the degree of the offense of which Pelfrey was convicted or a finding that the records involved were government records. *Id.* at ¶ 4, 13. Although the verdict form referred to the tampering with records offense "as charged in the indictment," the court held that the failure of the verdict form to mention the enhancing element that the records tampered with were government records meant that Pelfrey could only be convicted of misdemeanor records tampering based on the jury's finding of guilt. *Id.* at ¶ 13-14. The court affirmed the court of appeals' reversal of Pelfrey's conviction and remanded the case for the trial court to enter judgment convicting Pelfrey of tampering with records as a first-degree misdemeanor. *Id.* at ¶ 15.

{¶50} Although Pelfrey did not raise any issue related to the verdict form in the trial court, the court did not engage in a plain-error analysis. *Id.* at ¶ 5. Rather, the court held that the failure to strictly comply with R.C. 2945.75(A) requires a reviewing court to treat the jury's guilty verdict as a "'finding of guilty of the least degree of the offense charged'" regardless of the "additional circumstances." *Id.* at ¶ 13-14, quoting R.C. 2945.75(A)(2). The court explained:

> R.C. 2945.75(A) plainly requires that in order to find a defendant guilty of "an offense * * * of more serious degree," the guilty verdict must either state "the degree of the offense of which the offender is found guilty" or state that "additional element or elements are present." * * *
>
> Because the language of R.C. 2945.75(A)(2) is clear, this court will not excuse the failure to comply with the statute or uphold [the defendant's] conviction based on additional circumstances such as those present in this case. The express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form. We hold that pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense.

*Id.* at ¶ 12, 14.

{¶51} In 2012, the Ohio Supreme Court decided *Eafford*. In *Eafford*, the defendant was charged with possession of cocaine in an amount of less than five grams in violation of R.C. 2925.11(A), a fifth-degree felony. *Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, at ¶ 2, 4. The jury verdict form stated that Eafford was guilty of "possession of drugs" in violation of R.C. 2925.11(A) "as charged in Count Two of the indictment." (Emphasis deleted.) *Id.* at ¶ 6. The verdict form did not specify that the drug Eafford had possessed was cocaine. *Id.* Eafford appealed his fifth-degree felony conviction for possession of cocaine to this court.

{¶52} Because the verdict form did not indicate the degree of the offense or specify that the defendant had possessed cocaine, this court held, on appeal, that the verdict form could not

support a fifth-degree felony conviction and that Eafford could be convicted only of misdemeanor possession of drugs under R.C. 2945.75(A)(2) based on *Pelfrey*. *Id.* at ¶ 7. This court vacated Eafford's felony sentence for possession of cocaine and remanded for resentencing. *Id.* at ¶ 8. The state appealed to the Ohio Supreme Court. *Id.* The Ohio Supreme Court reversed this court's decision and reinstated the sentence imposed by the trial court. *Id.* at ¶ 19.

{¶53} In *Eafford*, the defendant raised no objection to the verdict form at trial. *Id.* at ¶ 11. The court held that Eafford had, therefore, "forfeited all but plain error." *Id.*

{¶54} Reviewing the case for plain error, the court determined that "the finding in the verdict [could] not be described as error, let alone an obvious defect in the trial proceedings" and that "[t]he form of the verdict did not affect the outcome of the trial." *Id.* at ¶ 18. Accordingly, the court held that Eafford had "failed to demonstrate that the trial court committed plain error in these circumstances." *Id.*

{¶55} In making this determination, the court looked beyond the jury verdict form and considered the record as a whole. The court explained:

> Count Two of the indictment alleged that Eafford possessed cocaine, expert testimony confirmed that the substance at issue tested positive for cocaine, and throughout the trial the parties and the court treated the phrase "possession of drugs" as synonymous with possession of cocaine. Further, in its jury instructions—a copy of which the court submitted to jurors who had it in the deliberating room during deliberations—the trial court explained to the jury that it could not find Eafford guilty of possession of drugs as charged in Count Two unless it found the drug involved to be cocaine or a compound, mixture, preparation, or substance containing cocaine. * * * Thus, when the jury found Eafford guilty as charged in Count Two of the indictment, its finding necessarily related to possession of cocaine.
>
> * * * The verdict form used the phrase "possession of drugs" but did not ask jurors to specify whether the drug involved in this case was or was not cocaine. The jurors found Eafford "guilty of Possession of Drugs in violation of §2925.11(A) of the Ohio Revised Code, as charged in Count Two of the indictment." * * * He knew from the outset that the state intended to prove his

guilt of possession of cocaine. And it did. The form of the jury verdict did not affect the outcome of the trial. The state intended to prove the accused guilty of possession of cocaine, it did so, and the jury in accordance with its findings rendered a verdict in conformity with the evidence presented by the state that Eafford possessed cocaine.

(Emphasis deleted.) *Id.* at ¶ 17-18. Although the court discussed R.C. 2945.75(A)(2), its decision did not turn on that provision because it concluded that Eafford was charged with and convicted of "the least degree of [the] offense" of possession with cocaine, i.e., a fifth-degree felony, rather than an "elevat[ed] * * * degree of the offense." *Id.* at ¶ 2, 16-19. In other words, as decided by the court,[3] *Eafford* did not involve the failure to include an enhancing element in the verdict form. As such, *Eafford* is distinguishable from *Pelfrey*.

{¶56} A year later, the Ohio Supreme Court decided *McDonald.* In *McDonald*, the court focused on *Pelfrey* and, without mentioning *Eafford* or plain error, once again made it clear that "in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, *the verdict form itself is the only relevant thing to consider* in determining whether the dictates of R.C. 2945.75 have been followed." (Emphasis added.) *McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, at ¶ 17. The court stated that "we look only to the verdict form signed by the jury" and not "'additional circumstances'" such as the incorporation of the indictment into the verdict form, the evidence presented at trial or the fact that the defendant failed to raise the inadequacy of the verdict form below in determining whether the defendant was "properly convicted" of an elevated offense. (Emphasis added.) *Id.* at ¶ 17-18, quoting *Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14.

---

[3] The court framed the issue to be decided in *Eafford* as "whether a jury-verdict form finding an accused guilty of possession of drugs as charged in the indictment supports a conviction for possession of cocaine, when the indictment, the evidence produced at trial, and the jury instructions all refer only to one drug, cocaine." *Id.* at ¶ 10.

**{¶57}** *McDonald* involved a felony enhancement for failure to comply with the signal or order of a police officer under R.C. 2921.331(B) and (C)(5)(a)(ii). *McDonald* at ¶ 1, 3. In that case, the verdict form the jury signed included a finding that the defendant had caused a "substantial risk of serious physical harm" under R.C. 2921.331(C)(5)(a)(ii) but did not reference the degree of the offense or include a finding that he had "willfully * * * elude[d] or fle[d] a police officer after receiving a visible or audible signal from a police officer to bring [his] motor vehicle to a stop" under R.C. 2921.331(B). *Id.* at ¶ 4-8. The court held that the verdict form did not sufficiently set forth the additional elements necessary to transform the failure to comply with the order or signal of a police officer from a misdemeanor to a third-degree felony. *Id.* at ¶ 19-25. The court explained:

> The verdict form stated that the jury found McDonald guilty of "Failure to Comply with Order or Signal of Police Officer And Caused A Substantial Risk of Serious Physical Harm To Persons or Property." * * * "[F]ailure to comply with an order or signal of a police officer" is the name of a violation of either R.C. 2921.331(A)—a general failure to comply with the order of a police officer—or R.C. 2921.331(B)—willful flight in a motor vehicle from a police officer. Only a violation of R.C. 2921.331(B) can be the basis of an enhancement under R.C. 2921.331(C)(5)(a)(ii) for creating a substantial risk of injury or damage to property.
>
> * * *
> The only path to a felony conviction for failure to comply with the order or signal of a police officer is through R.C. 2921.331(B). If only one type of failure to comply can lead to a felony, the particular elements of that type of failure to comply constitute one part of R.C. 2945.75's "one or more additional elements [that] make[ ] an offense one of more serious degree." The first element of a felony charge under R.C. 2921.331 is that the failure to comply involved willful elusion or flight from a police officer. Without that element, there can be no felony.
>
> The verdict form in this case does not indicate that the elements of R.C. 2921.331(B) are implicated. Therefore, the verdict form the jury signed does not set forth the additional elements that enhance the crime of failure to comply from a misdemeanor to a felony; it therefore supports only a misdemeanor conviction.

*Id.* at ¶ 20, 22-23.

**{¶58}** In the aftermath of these decisions, this court and others have attempted to reconcile them. *See, e.g., State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228; *State v. Pierce*, 2017-Ohio-8578, 100 N.E.3d 860 (8th Dist.); *see also State v. Gibert*, 2017-Ohio-7676, 97 N.E.3d 1004 (1st Dist.); *State v. Duncan*, 3d Dist. Logan No. 8-12-15, 2014-Ohio-2720; *State v. Sanders*, 2016-Ohio-7204, 76 N.E.3d 468 (5th Dist.); *State v. Barnette*, 2014-Ohio-5405, 26 N.E.3d 259 (7th Dist.); *State v. Henry*, 9th Dist. Summit No. 27758, 2016-Ohio-680.

**{¶59}** In *Kilbane*, this court conducted a two-part analysis. It first considered whether the jury verdict form strictly complied with R.C. 2945.75 based on *Pelfrey*. *Kilbane*, 2014-Ohio-1228, at ¶ 15-16. It then considered whether any deficiency in the verdict form rose to the level of plain error considering the "additional circumstances," e.g., the jury instructions, the impact of stipulations and the evidence presented at trial, based on *Eafford*. *Id.* at ¶ 17-19.

**{¶60}** In *Kilbane*, the defendant was charged with two counts of DUI. Each count also carried furthermore specifications alleging that Kilbane had been previously convicted of a felony DUI, elevating the pending DUI charges to third-degree felonies. *Id.* at ¶ 7. The jury returned guilty verdicts on both counts as charged in the indictment and made a "further finding" on each verdict form that the defendant had been previously convicted of a DUI in the Cuyahoga County Common Pleas Court, referencing the case number. *Id.* at ¶ 7, 16. Although Kilbane did not raise any issue with the verdict forms below, on appeal, he argued that he should have been convicted of misdemeanors instead of third-degree felonies because although the verdict forms each referenced a prior DUI conviction, they failed to identify the prior conviction as a felony and, therefore, did not comply with the requirements for enhanced penalties under R.C.

2945.75. *Id.* at ¶ 8, 18. The court indicated that *Pelfrey* could be read as "impl[ying] that failure to strictly comply with R.C. 2945.75(A)(2) always constitutes plain error."). *Id.* at ¶ 17.

{¶61} Looking first at the jury verdict forms alone, the court held that the jury verdict forms "contain the necessary degree-raising element to comply with R.C. 2945.75(A)(2)." *Id.* at ¶ 16. The court distinguished *Pelfrey*, noting that whereas in *Pelfrey* the verdict form was "completely silent as to the aggravating element," in *Kilbane*, the jury verdict forms "contain[ed] a statement of the additional element to justify convicting [the defendant] of the greater degree of the offense." (Emphasis deleted.) *Id.* at ¶ 15.

{¶62} Applying a plain-error analysis and considering the "other circumstances during the proceedings" as in *Eafford*, the court further found that even if the jury verdict forms were defective, any error did not rise to the level of plain error because "the absence of the single word 'felony' when the parties specifically identified the prior felony DUI conviction by its specific case number does not constitute an obvious error." *Id.* at ¶ 18-19. The court held that there was "no basis to conclude that the inclusion of the single word 'felony' would have changed the outcome" because Eafford had admitted at trial that his prior conviction was a felony violation of R.C. 4511.19, the parties had stipulated to that fact and the jury had been instructed that Eafford's prior conviction was a felony DUI. *Id.* at ¶ 17-19. Thus, regardless of whether a showing of strict compliance or plain error was required, the court found that there was no reversible error based on the verdict forms.

{¶63} In *Pierce*, this court took a slightly different approach. Finding "the mandates of *Pelfrey* and *McDonald* to be controlling," the court "consider[ed] only the verdict form itself in determining whether there was compliance with R.C. 2945.75." *Pierce,* 2017-Ohio-8578, 100 N.E.3d 860, at ¶ 24. In that case, the defendant challenged his conviction for third-degree

felony escape on the ground that the verdict form did not include a degree for the escape offense or the aggravating element that elevated the offense from a fifth-degree felony to a third-degree felony, i.e., a finding that the most serious offense for which he was under detention at the time of escape was a felony of the third, fourth or fifth degree. *Id.* at ¶ 10-12. The state argued that any defect in the jury verdict form did not constitute plain error because (1) the aggravating element was charged in the indictment and the verdict form stated that the jury found Pierce guilty of escape as charged in the indictment, (2) the trial court instructed the jury regarding the "offense-enhancing language" and stated that it could not find Pierce guilty of escape unless it found that he committed the offense while under detention for a third-, fourth- or fifth-degree felony and (3) the state had presented evidence that Pierce was detained for vandalizing the window of an apartment door, a fifth-degree felony. *Id.* at ¶ 17-18. The court distinguished *Eafford*, noting that

> "[t]he charge in *Eafford*, possession of cocaine, did not involve any additional elements that elevated the level of the offense. The verdict form described the offense as 'possession of drugs,' but the only drug involved was cocaine. Therefore, possession of cocaine was necessarily what the jury found the defendant guilty of."

*Id.* at ¶ 22, quoting *State v. Melton*, 2013-Ohio-257, 984 N.E.2d 1112, ¶ 31 (8th Dist.).[4]

Because the jury verdict form did not state the degree of the escape offense or the most serious offense for which Pierce was under detention when he committed the escape offense, the court

---

[4] In *Melton*, which was decided before *McDonald*, this court reduced a defendant's conviction for discharge of a firearm on or near prohibited premises from a first-degree felony to a fourth-degree misdemeanor where the verdict form did not mention the degree of the offense or the presence of the alleged enhancing element, i.e., serious physical harm. *Melton*, 2013-Ohio-257, 984 N.E.2d 1112, at ¶ 22, 32. The court viewed *Pelfrey* and *Eafford* as "represent[ing] reconcilable applications of the plain error doctrine" and concluded that the case was "more analogous to *Pelfrey* than to *Eafford*." *Id.* at ¶ 31-32.

held that his conviction for escape should be reduced to a fifth-degree felony to conform to the jury's verdict. *Id.* at ¶ 24-25.

**{¶64}** For the reasons set forth in *Pierce* and *Melton* and as discussed above, we believe that *Eafford* is distinguishable from this case and that *Pelfrey* and *McDonald* control the result here. *See also Barnette*, 2014-Ohio-5405, 26 N.E.3d 259, at ¶ 36-38; *Gibert*, 2017-Ohio-7676, 97 N.E.3d 1004, at ¶ 16-23.

**{¶65}** Accordingly, considering only the verdict form itself, we find that the verdict form supports a conviction for fourth-degree felony domestic violence, not a conviction for third-degree felony domestic violence.

**{¶66}** Turning first to the jury's finding that Sanders was "previously convicted of or pleaded guilty to Domestic Violence and Attempted Domestic Violence on or about the 22nd day of August, 2016, in the Common Pleas Court, Cuyahoga County, Ohio, Case No. CR 16 604434, in violation of R.C. §2923.02/2919.25(A)," we conclude that this finding was sufficient to raise the level of the offense based on Sanders' prior conviction for attempted domestic violence under R.C. 2919.25(D). Although "previously convicted of or pleaded guilty to Domestic Violence and Attempted Domestic Violence" is inartfully phrased, the verdict form goes on to identify the attempt statute and domestic violence statute together in identifying the statutory violation that serves as the basis for the conviction, i.e., "in violation of R.C. §2923.02/2919.25(A)." Furthermore, "attempt" is expressly included in the definition of domestic violence under R.C. 2919.25(A), i.e., "[n]o person shall knowingly cause or *attempt* to cause physical harm to a family or household member." (Emphasis added.)

**{¶67}** With respect to the jury's finding that Sanders was previously "convicted of Attempted Abduction on or about the 17th day of July, 2012, in the Common Pleas Court,

Cuyahoga County, Ohio, Case No. CR 12 561683, in violation of R.C. §2923.02/2905.02(A)(1)," the state acknowledges that the verdict form does not including a finding that the attempted abduction conviction involved a family or household member. However, it maintains that R.C. 2745.75(A)(2) requires only that the verdict form state either "the degree of the offense of which the offender is found guilty, or that such additional element or elements are present" and that a statement setting forth the "elements of the elements of a charge" — such as a statement that the victim in the prior case was a family or household member — goes beyond the "depth" required under R.C. 2945.75. We disagree.

{¶68} First, R.C. 2905.02(A)(1) states: "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, remove another from the place where the other person is found." Accordingly, Sanders' prior conviction for attempted abduction does not in and of itself include the element that the victim of the offense was a family or household member.

{¶69} Second, there appears to be no dispute that under R.C. 2919.25(D), Sanders' prior conviction for attempted abduction could elevate his domestic violence offense only if it involved a "family or household member." If Sanders' prior conviction for attempted abduction involved someone who was not a "family or household member" at the time of the commission of that offense, that prior conviction could not elevate his current domestic violence offense. The fact that Sanders' prior conviction for attempted abduction involved a "family or household member" was, therefore, an "additional element" that "makes an offense one of more serious degree" under R.C. 2945.75. Because the verdict form the jury signed in this case did not state that that such additional element was present, the verdict form supports only a conviction for a fourth-degree felony under R.C. 2945.75(A)(2).

**{¶70}** The state argues that any error in the verdict form is harmless and is not grounds for reversing Sanders' conviction. The state contends that because Sanders stipulated to the prior convictions at trial, his assignment of error based on the verdict form does not "pass the requirements of plain error review."

**{¶71}** Even if — contrary to the mandates of *Pelfrey* and *McDonald* — we were to look beyond the verdict form and consider whether, based on the record as a whole, the deficiency in the verdict form constituted plain error, it would not change the result here.

**{¶72}** Here, the error in the verdict form was obvious and clearly affected the outcome of the proceedings. Although Sanders stipulated to the fact that he had been previously convicted of attempted abduction, he did not stipulate that his prior conviction for attempted abduction involved a family or household member. *Compare State v. Guice*, 9th Dist. Lorain No. 16CA011054, 2017-Ohio-9295, ¶ 53-56 (where parties agreed that the victims were peace officers and defendant stipulated that jury did not need to make that finding, defendant was not entitled to a reduction in the offense-levels of his convictions on the ground that the verdict forms did not include a finding as to the enhancing element that the victims were peace officers). The jury was not instructed that Sanders' prior conviction for attempted abduction involved a family or household member or that it needed to find that Sanders' prior conviction for attempted abduction involved a family or household member to find him guilty as charged in the indictment. The judgment entry from Sanders' prior conviction for attempted abduction does not indicate that the victim was a family or household member, and no other evidence was presented at trial regarding Sanders' prior conviction for attempted abduction and whether the offense involved a family or household member. Accordingly, the jury could not have found Sanders guilty of a third-degree felony based on the evidence presented at trial.

**{¶73}** Sanders' second assignment of error is sustained in part and overruled in part. Sanders' conviction for domestic violence is reduced from a third-degree felony to a fourth-degree felony to conform to the verdict form. We vacate Sanders' sentence for third-degree felony domestic violence and remand the case for the limited purpose of resentencing Sanders on the offense as a fourth-degree felony. Based on our resolution of Sanders' second assignment of error, his third and fourth assignments of error are moot.

**{¶74}** Judgment affirmed in part; modified in part; remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR